### In re JACOB BERRY & CO.

(District Court, S. D. New York. February, 1906.)

1. BANKRUPTCY—DISCHARGE—TRANSFER OF PROPERTY WITH INTENT TO DEFRAUD CREDITORS.

The pledging by a firm of brokers, within four months prior to their bankruptcy, of stock in their hands owned by customers to secure a loan to themselves, was not a transfer of their property with intent to hinder, delay, or defraud their creditors, within the meaning of Bankr. Act July 1, 1898, c. 541, § 14, subd. "b," 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 684], which debars the bankrupts from a discharge, although they may have had a lien on some of the stock pledged.

2. SAME—PARTNERSHIP—TRANSFER OF PROPERTY BY EMPLOYÉS.

Where employés of a partnership had general authority to obtain loans for the firm on securities, a transfer by such employés of stocks belonging to the firm by way of pledge for such a loan was the act of the partners, and, if made within four months prior to their bankruptcy, and with intent to defraud their creditors, would defeat their right to a discharge.

In Bankruptcy. On report of referee granting discharge.

In this case objections were made to the discharge of the bankrupts, who were a firm of stockbrokers in the city of New York. It was found by the referee that they had pledged as security for loans to the firm, made by the

Hanover National Bank and the Consolidated National Bank, certain stock certificates, which were the property of their customers, who had not authorized the pledge. Of these certificates for 300 shares of Columbus & Hocking coal and iron stock had been sent to the firm for sale by a customer who had no account with them. The other securities consisted of shares of Union Pacific common and American Telephone stock, which had been sent to the firm by customers who had open accounts with them as margin for their accounts, but under special agreements with them that they should be held as special trust deposits, and not used without further notice. The referee further found that the bankrupts had no personal knowledge of the hypothecation of this stock, but that the same was made by the cashier of the firm and his assistants, who had general authority to select the securities hypothecated for loans, and who did not know of the arrangement that the securities were not subject to such hypothecation. The referee reported that this action was a transfer of the broker's special property in the securities, but had been made by the bankrupts' clerks without their authority, was not made with fraudulent intent to hinder, delay, or defraud, and hence was no objection to their discharge, although if the bankrupts had authorized or known of the hypothecation their discharge must have been denied to them.

Roger Foster, for bankrupts.

Joline, Larkin & Rathbone (Arthur H. Van Brunt and Henry V. Poor, of counsel), for objecting creditors Collins and Baldwin.

James, Schell & Elkus (James N. Rosenberg and Robert P. Levis, of counsel), for objecting creditors Wernz et al.

HOLT, District Judge. I think that the bankrupts should be granted their discharge in this case, but on somewhat different grounds from those stated by the referee in his report. I think that the customers' stock pledged was not the bankrupts' property, and that its transfer was not with intent to hinder, delay, and defraud the bankrupts' creditors, within the meaning of the provision of the bankrupt act relating to the grounds for opposing a bankrupt's discharge. The stock was the customers' property. If the bankrupts had what is called a special property in it, in the way of a lien upon it, I do not think that that is what is referred to in the bankrupt act as the bankrupt's property. Moreover, if its transfer was with an intent to defraud anybody, it was with an intent to defraud the particular customer, and not the entire body of creditors. The ground upon which the referee has granted the discharge, that the stock was pledged by employés of the bankrupts, and not by the bankrupts themselves, and that therefore the bankrupts had no intent in the matter, and therefore are not barred from a discharge by such act, seems to me untenable. The employés who pledged this stock were given complete control of the business of borrowing money for the firm on securities. If such employés, having such general authority, had in fact transferred the bankrupts' property with intent to defraud the bankrupts' creditors, I think that the bankrupts' discharge would have been barred.

On the grounds stated, the referee's report is confirmed, and the discharge granted.